UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COVENANT STEEL WAREHOUSE, INC.

         Plaintiff/Counter-Defendant      Case No. 1:21-cv-10609
v.      Honorable Thomas L. Ludington
     Magistrate Judge Patricia T. Morris
ARAUCO NORTH AMERICA, INC.,

         Defendant/Counter-Plaintiff
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL AND DISMISSING COUNT III OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

This matter is before the Court pursuant to Defendant/Counter-Plaintiff Arauco North America, Inc.'s ("Arauco") Motion for Partial Dismissal. ECF No. 15. This case involves a contract dispute arising from the construction of a manufacturing facility in Grayling, Michigan. Each party seeks damages from the other for breach of their agreement. Arauco has moved to dismiss Plaintiff/Counter-Defendant Covenant Steel Warehouse, Inc.'s ("Covenant") fraudulent inducement claim as barred by the economic loss doctrine. For the reasons set forth below, Arauco's Motion to Dismiss will be granted, and Count III of Covenant's First Amended Complaint will be dismissed.

**I.**

**A.**

This case concerns a commercial dispute between two corporate entities: Covenant Steel Warehouse, Inc. and Arauco North America, Inc. Covenant is an Alabama corporation specializing in the design and construction of industrial and commercial buildings. ECF No. 6 at PageID.49-50. Arauco is a Delaware corporation that manufactures wood products used in construction. *Id.*

On January 17, 2017, Covenant and Arauco entered into a contract (the "Building Agreement") whereby Covenant agreed to construct a new manufacturing facility for Arauco in Grayling, Michigan in exchange for a contract price of $21,145,600. *Id.* at PageID.50. Under the terms of the Building Agreement, Covenant agreed to cure defects in the facility at no additional cost to Arauco, subject to certain limitations, and to indemnify Arauco for all losses "arising from or relating to the performance or failure to perform [under the Building Agreement]." *Id.* at PageID.52, 55.

For reasons that remain contested by the parties,[1] the facility required various structural repairs shortly after completion. Accordingly, on July 13, 2019, the parties executed a second contract (the "Purchase Order") whereby Arauco was to pay $1,664,507.82 to Covenant in exchange for additional work on the facility. ECF No. 1 at PageID.3. Covenant alleges that even though it fully performed the additional work, Arauco has only tendered $1,190,435.56 in payment, leaving a balance of $489,058.92. *Id.*

**B.**

On March 18, 2021, Covenant brought this action seeking to recover the remaining balance of the Purchase Order. ECF No. 1. The Complaint included separate claims for breach of contract and foreclosure of a construction lien. *Id.* at PageID.4–6. In response, Arauco counterclaimed for, among other claims, breach of the Building Agreement and indemnification thereunder. ECF No. 6. As part of its damages, Arauco seeks to recover the $1,190,435.56 paid to Covenant under the Purchase Order. *Id.* at PageID.63.

---

[1] Arauco claims that Covenant's design, materials, and workmanship were defective. *See* ECF No. 6 at PageID.57–58. Covenant, however, denies having breached any of its contractual obligations in constructing the facility. *See* ECF No. 13 at PageID.138. The cause of the defects will presumably be explored during discovery.

Covenant has since filed a first amended complaint adding a claim for fraud in the inducement. ECF No. 14 at PageID.155. In short, Covenant alleges that it was induced to enter the Purchase Order by Arauco's bad faith promise to pay for the repairs. *Id.*

On June 25, 2021, Arauco moved to dismiss Covenant's fraud claim as barred by the economic loss doctrine. ECF No. 15. Arauco's Motion has since been fully briefed by the parties. ECF Nos. 20, 21.

## II.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679 (quotations and citation omitted).

## III.

At the center of Arauco's Motion is one of the more troublesome topics in commercial litigation: the often-uncertain boundary between tort and contract law.

"Generally, under Michigan law, a plaintiff '[may] not maintain an action in tort for nonperformance of a contract.'"[2] *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015) (quoting *Ferrett v. Gen. Motors Corp.*, 475 N.W.2d 243, 247 (Mich. 1991)). While this rule is frequently referred to as the "economic loss doctrine," it is more properly termed the "rule of *Hart v. Ludwig*" or the "*Hart* doctrine" where, as here, the contract at issue is not governed by the Uniform Commercial Code.[3] *See* Vincent A. Wellman, Assessing the Economic Loss Doctrine in Michigan: Making Sense Out of the Development of Law, 54 Wayne L. Rev. 791, 818–25 (2008) (contrasting the economic loss doctrine and rule of *Hart v. Ludwig*). In *Hart*, the owner of an orchard brought a negligence action against a man whom he had contracted with to care for and maintain the orchard. *Hart v. Ludwig*, 79 N.W.2d 895, 896 (Mich. 1956). The would-be caretaker had allegedly quit the job without fertilizing the orchard or protecting it from wildlife, leading the

---

[2] While Section 19 of the Purchase Order states that the terms and conditions thereof shall be governed by Georgia law, *see* ECF No. 14-2 at PageID.171, neither party has insisted on a similar rule for Covenant's fraud claim. To the contrary, both parties have relied exclusively on Michigan law in their briefing. "A party who is silent on choice-of-law forfeits choice-of-law issue." *In re Trade Partners, Inc., Invs. Litig.*, No. MDL 1846, 2008 WL 2757835, at *7 (W.D. Mich. July 11, 2008) (citing *Bowers v. Fed'n Internationale de l'Automobile*, 489 F.3d 316, 323 n. 4 (7th Cir.2007)); *see also ACE Am. Ins. Co. v. Danallan, Inc.*, No. EP-08-CV-296-DB, 2009 WL 10698760, at *2 (W.D. Tex. Apr. 23, 2009) ("[A] party has an obligation to call the applicability of another state's law to the court's attention in time to be properly considered. For this reason, by failing to brief any other state's law, [a party forfeits] any choice of law argument.") (internal quotation marks and citations omitted) (alteration original). Because both parties seem to agree that Covenant's fraud claim should be governed by Michigan law, this Court will not conduct a formal choice of law analysis.

[3] The economic loss doctrine derives from Article 2 of the Uniform Commercial Code. *See Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 861 (Mich. Ct. App. 2002). "The doctrine's basic premise is that economic losses that relate to commercial transactions are not recoverable in tort." *Id.* Since its formal adoption by the Michigan Supreme Court in *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612 (Mich. 1992), the economic loss doctrine has been frequently invoked to "bar recovery in tort whe[re] damages [were] recoverable under the Uniform Commercial Code," *Quest Diagnostics*, 656 N.W.2d at 862 (collecting cases). Despite their distinct origins, the similarity between the rule of *Hart* and the economic loss doctrine often leads them to be blended into a single rule. *See Visteon Corp. v. VarrocCorp Holding B.V.*, No. 14-12418, 2015 WL 1530333, at *2 (E.D. Mich. Mar. 31, 2015) ("There has been some confusion in Michigan law on this point, but the term 'economic loss doctrine' only applies to cases arising under the Uniform Commercial Code."); *see also Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, No. 10-13181, 2013 WL 27921, at *9 (E.D. Mich. Jan. 2, 2013) (noting that "'the economic loss doctrine' applies solely in U.C.C. cases" but applying the *Hart* doctrine to dismiss the plaintiff's fraud claims).

owner to pursue his remedies in tort. *Id.* As the Michigan Supreme Court explained, however, the basis for the suit was not the violation of a duty imposed by law, which would be actionable in tort, but the violation of a promise to perform under a contract:

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie.

*Id.* at 898–99. Since *Hart* was decided, Michigan courts have repeatedly dismissed tort claims where the duty alleged to have been violated was not independent of an underlying contract. *See Ferrett v. Gen. Motors Corp.*, 475 N.W.2d 243, 246 n.4 (1991) (collecting cases).

"Not all tort claims, however, are barred by the existence of a contract." *DBI Invs.*, 617 F. App'x at 381. One well-settled exception to the *Hart* doctrine is fraud in the inducement. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995). In *Huron Tool*, the purchaser of a software system filed suit against the seller, alleging breach of contract and warranty, misrepresentation, and fraud. *Id.* at 543. Because fraud is a kind of tort, the seller argued that the buyer's fraud claim was barred by the economic loss doctrine. *Id.* at 544. The Michigan Court of Appeals, however, rejected this "simple argument" in favor of an analysis that "consider[ed] the underlying policies of tort and contract law." *Id.* at 544. After reviewing precedent from other jurisdictions, the court concluded that certain intentional torts, including fraud in the inducement, constituted an exception to the economic loss doctrine—an exception that was consistent with the boundary between tort and contract law:

> [T]he essence of the "economic loss" rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies. There is a danger that tort remedies could simply engulf the contractual

> remedies and thereby undermine the reliability of commercial transactions. Once the contract has been made, the parties should be governed by it.
>
> Fraud in the inducement, however, addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.

*Id.* at 544 (quoting *Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1237–38 (N.D. Fla. 1991)). Of course, not all types of fraud qualify as fraud in the inducement. The *Huron Tool* court distinguished between situations "where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior" and situations "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold [and] the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." *Id.* at 545. Only the former sort of deception would constitute fraud in the inducement. The court simplified this distinction as that between "fraud extraneous to the contract and fraud interwoven with the breach of contract." *Id.*

While *Huron Tool* involved the economic loss doctrine, the same exception has been observed in cases governed by the common law.[4] *See, e.g.*, *PSP Stores, LLC v. Ford*, No. 338241, 2018 WL 4164423, at *4 (Mich. Ct. App. Aug. 30, 2018); *DBI Invs.*, 617 F. App'x at 382; *JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014); *Visteon Corp.*, 2015 WL 1530333, at *3; *Santander Consumer USA*, 2013 WL 27921, at *12. Accordingly, the question here is whether Covenant has alleged the kind of fraud that is "extraneous to the contract" or "interwoven with the breach." *Huron Tool*, 532 N.W.2d at 545.

---

[4] Given the similarity between the two doctrines, courts sometimes misidentify the rule of *Hart* as the economic loss doctrine. For example, the Sixth Circuit in *DBI Investments* purported to rely on the economic loss doctrine while, in effect, applying the rule of *Hart* to bar a claim of fraud premised on misrepresentations involving a partnership agreement. *See DBI Invs.*, 617 F. App'x at 382.

Covenant alleges that Arauco's promise to pay under the Purchase Order was made in bad faith. ECF No. 14 at PageID.152. Specifically, Covenant claims that at the time the Purchase Order was executed, Arauco harbored the secret intention "not to pay Covenant and/or . . . to subsequently recover the amounts paid to Covenant against the [Purchase Order]." *Id.* In support, Covenant points to the fact that Arauco, in its answer to the Complaint, characterized its decision to execute the Purchase Order as an act of "cover" designed to "mitigate its damages." *Id.*; ECF No. 6 at PageID.44.

Covenant's theory of fraud, which is sometimes referred to as "promissory fraud" or "bad faith promising," is an exception to the general operation of Michigan tort law. In Michigan, the general rule is that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." *Higgins v. Lawrence*, 309 N.W.2d 194, 197 (Mich. Ct. App. 1981). "Future promises are contractual and do not constitute fraud." *Id.* Nonetheless, Michigan courts recognize an exception where the claimant alleges fraudulent misrepresentation "based upon a promise made in bad faith without intention of performance." *Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629, 640 (E.D. Mich. 2012) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (1976).

Though Covenant's theory is relatively rare, this is not the first case in which promissory fraud has been deployed in the hope of evading the *Hart* doctrine. As Arauco notes, Judge Borman recently dismissed a similar promissory fraud theory in *Marco Int'l, LLC v. Como-Coffee, LLC*, No. 17-CV-10502, 2018 WL 1790171 (E.D. Mich. Apr. 16, 2018). There, a coffee company promised to make royalty payments in exchange for a license to use racecar driver Marco Andretti's name and image in its marketing. *Id.* at *1. When the company failed to make the promised payments in full, the licensor brought an action for breach of contract and promissory

fraud. *Id.* at *2. The licensor's primary allegation was that the promises of payment were made without "any intention" to pay. *Id.* at *2. After reviewing the *Hart* doctrine and its exceptions, Judge Borman held that the licensor's allegations of fraud failed to evade the rule of *Hart*. "[T]he obligation to make the payments," he explained, "arise[d] solely out of the Agreement," and as a result, "the [licensor] did not plead facts that plausibly allege[d] that [the licensee] breached some duty independent of the duty to perform under the Agreement." *Id.* at *5.

The allegations in *Marco* are strikingly similar to those in this case. Like the licensor in *Marco*, Covenant claims that it was induced to enter a contract by promises of payment that were made without the present intention of performance. ECF No. 14 at PageID.152. Furthermore, Arauco's obligation to pay—which forms the basis for both the breach of contract and promissory fraud claims—"arise[s] solely out of the Agreement." *Marco*, 2018 WL 1790171, at *5. Judge Borman's conclusion that such allegations are insufficient to avoid the *Hart* doctrine is persuasive and consistent with other authority interpreting Michigan law. *See PSP Stores*, 2018 WL 4164423, at *4 ("Ford's failure to fulfill a promise to pay under the contract, even if done separately before the contract was executed, is indistinguishable from his failure to fulfill the actual contractual promise, which sounds in breach of contract."); *see also Huron Tool*, 532 N.W.2d at 546 (affirming dismissal of fraud claim where the "fraudulent representations. . . concern[ed] the quality and characteristics of the software system sold by defendants" and were therefore "indistinguishable from the terms of the contract and warranty that . . . were [allegedly] breached").

Covenant attempts to distinguish *Marco* with the allegation that, in addition to lacking the good faith intent to pay Covenant for its services, Arauco secretly "intended to recover [] money paid to Covenant as damages under the Building Agreement." ECF No. 20 at PageID.351 n.7. Covenant further states that throughout the process of negotiating the Purchase Order, Arauco

failed to "suggest or even hint that [] it might withhold any payment or refuse to pay any amount recited in the Purchase Order in reliance upon . . . the Building Agreement." *Id.* at PageID.344.

The problem for Covenant is that its alternative theory of promissory fraud is as interwoven with the parties' contractual conduct as its primary theory. In effect, Covenant seeks to hold Arauco liable in tort for entering a contract without informing Covenant that it might seek to recover payments made thereunder through the enforcement of another, related contract. Presumably, when the court in *Huron Tool* stated that a tort action could be based on "pre-contractual conduct," *Huron Tool*, 532 N.W.2d at 544, it did not mean *other* contractual conduct within the *same* course of dealing. Fraud in the inducement is an exception to the *Hart* doctrine only because it respects the boundary between tort and contract law, unlike other tort claims that, without some judicial limitation, might "simply engulf [] contractual remedies."[5] *Id.* But by allowing one party to elude the limitations of contract law when the other party seeks to enforce terms previously negotiated, Covenant's theory of promissory fraud would turn *Huron Tool* on its head and "allow[] contract law to 'drown in a sea of tort.'" *Huron Tool*, 532 N.W.2d at 546 (quoting *Neibarger*, 486 N.W.2d at 618).

Based on the foregoing, Covenant's theory of fraud is barred by the *Hart* doctrine. Arauco's Motion for Partial Dismissal will be granted and Count III of the First Amended Complaint will be dismissed.

---

[5] Covenant laments that it is "entirely without a remedy" in contract because of the nature of the "clandestine scheme" hatched by Arauco. ECF No. 20 at PageID.353. Covenant's reasoning is that if Arauco pays the amount due under the Purchase Order, Covenant could not then allege breach of the Purchase Order if Arauco were to recover those payments as damages under the Building Agreement. *Id.* But in that scenario, the reason that Covenant would go "entirely without a remedy" would be because Arauco prevailed on its counterclaim for indemnity and breach of contract—a counterclaim that Covenant has answered and presumably intends to defend. Leaving commercial parties like Covenant and Arauco to the remedies they negotiated is not an injustice but exactly the result intended by Michigan law. *See Huron Tool*, 532 N.W.2d at 545 (noting that a purpose of the economic loss doctrine is to "encourage[] parties to negotiate economic risks through warranty provisions and price").

## IV.

Accordingly, it is **ORDERED** that Defendant/Counter-Plaintiff Arauco North America, Inc.'s Motion for Partial Dismissal, ECF No. 15, is **GRANTED**. Count III of Plaintiff/Counter-Defendant Covenant Steel Warehouse, Inc.'s First Amended Complaint, ECF No. 14, is **DISMISSED**.

Dated: August 4, 2021                                       s/Thomas L. Ludington
                                                                                                    THOMAS L. LUDINGTON
                                                                                                    United States District Judge